**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| DAVID PEACOCK,<br><br>*Plaintiff*,<br><br>v.<br><br>EASYVET HOLDINGS, INC. and DREW BARTHOLOMEW,<br><br>*Defendants*. | ) | Case No. 3:25-cv-613<br><br>Judge Atchley<br><br>Magistrate Judge McCook |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 28]. For the reasons explained below, Defendants' Motion [Doc. 28] is **DENIED**.

## I. BACKGROUND

What began as a promising business opportunity ended with a dispute over a $300,000 refundable deposit, a failed acquisition, and a lawsuit.

Beginning in 2021, Plaintiff David Peacock was approached by Defendant Easyvet Holdings, Inc.'s ("Easyvet") then-Chief Executive Officer, Tim Schoenfedler, about becoming a franchisee within Easyvet's veterinary-care franchise system. [Doc. 27 at ¶ 10]. Easyvet marketed itself as a turnkey solution for entrepreneurs and veterinary professionals seeking to own and operate veterinary clinics. [*Id.* at ¶¶ 9, 12]. As part of its recruitment of Plaintiff, Easyvet highlighted Mr. Schoenfedler's prior success in other franchising ventures and provided Plaintiff with pro forma financial statements and revenue projections that purported to show the clinics would generate positive cash flow—representations Plaintiff alleges tuned out to be false. [*Id.* at

¶¶ 13–18]. Relying on those representations, Plaintiff ultimately purchased the rights to own and operate Easyvet clinics in Alabama, Texas, and Tennessee. [*Id.* at ¶ 19].

The promise of a thriving franchise system, however, soon began to look less certain. By late 2023, Plaintiff alleges that the Easyvet business model begun to flounder. [*Id.* at ¶¶ 20–21]. According to Plaintiff, Easyvet provided little to no operation support to its franchisees, while numerous franchise locations were transferred or abruptly closed. [*Id.* at ¶¶ 21–23]. Rather than addressing the mounting problems facing its franchisees, Plaintiff alleges that Easyvet effectively abandoned its obligations under the franchise model and shifted its attention to a related entity, Vetcelerator, which served as Easyvet's marketing and consulting arm. [*Id.* at ¶¶ 25–28]. Plaintiff alleges that the decline of Easyvet was substantial, leaving only a handful of its clinics still operating today. [*Id.* at ¶ 29].

As the franchise system deteriorated, Plaintiff began looking for another way to salvage the investment. He explored acquiring Easyvet itself, believing that, under his leadership, the company could be restructured and revitalized. [*Id.* at ¶¶ 30–31]. Defendant Drew Bartholomew, Easyvet's then-Chief Operating Officer, played a central role in negotiating and facilitating the proposed sale. [*Id.* at ¶ 32]. Plaintiff alleges that Mr. Bartholomew provided extensive revenue and cost analysis and financial projections to persuade him to enter the deal. [*Id.* at ¶ 35]. Plaintiff would later conclude, however, that those projections painted a misleading picture of Easyvet's true financial condition. [*Id.* at ¶ 36]. According to Plaintiff, Easyvet was largely insolvent and commingling its funds with Vetcelerator by diverting revenue generated through its franchise operation to finance Vetcelerator. [*Id.* at ¶ 37–38]. Nevertheless, in August 2023, Mr. Bartholomew allegedly represented to Plaintiff that Easyvet remained a viable business opportunity and led Plaintiff to believe that the acquisition would procced. [*Id.* at ¶ 38–41]. Relying

on those representations, Plaintiff agreed to a proposed purchase price of approximately $2.8 million, structured as a $300,000 refundable deposit, a $500,000 promissory note to be held by Easyvet, and a $2 million acquisition loan. [*Id.* at ¶¶ 42–43].

On October 11, 2023, Plaintiff and Easyvet entered into a Refundable Deposit Agreement (the "Deposit Agreement"). [*Id.* at ¶ 44]. Plaintiff paid the $300,000 deposit as required. [*Id.* at ¶ 45]. Importantly, the Deposit Agreement provided that the $300,000 deposit is "refundable should [Plaintiff] fail to obtain financing in 120 days after making reasonable efforts to do so." [*Id.* at ¶ 46; Doc. 27-1[1]]. Around the same time the parties executed the Deposit Agreement, Mr. Bartholomew became Easyvet's Chief Executive Officer and assumed personal and exclusive control over the sale of Easyvet. [Doc. 27 at ¶ 50]. Plaintiff alleges that Mr. Bartholomew personally assured him that the deposit was fully refundable and would be returned if Plaintiff could not secure bank financing. [*Id.* at ¶ 51].

Securing financing, however, proved more difficult than expected. [*Id.* at ¶ 52]. In early 2024, after several unsuccessful attempts, Easyvet's then-Chief Financial Officer, Tyler Tarr, introduced Plaintiff to Settlers Best, a division of Wings Financial (the "Bank"). [*Id.* at ¶ 53]. Plaintiff alleges that Mr. Tarr represented that his nephew sat on the Bank's board and would ensure that Plaintiff received approval for the loan. [*Id.*]. Plaintiff thereafter negotiated with the

[1] Ordinarily, a court may only consider matters outside the complaint when ruling on a Rule 12(b)(6) motion to dismiss by converting the motion into one for summary judgment. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). That said, certain categories of evidence do not fall within this general rule. Specifically, a court may consider "any exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting a motion to dismiss into a motion for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Here, the Court is permitted to consider the Deposit Agreement between the parties at this motion to dismiss stage because it is attached to the FAC and is central to the claims therein.

Bank and, after obtaining SBA approval, was scheduled to close on the acquisition loan. [*Id.* at ¶¶ 54–55]. But just days before closing, the Bank withdrew from the transaction. [*Id.* at ¶ 56]. Plaintiff alleges that the Bank did so after Mr. Tarr's nephew unexpectedly stepped down from the Bank's board. [*Id.* at ¶ 57].

With the financing gone, Plaintiff turned to the one thing he believed was certain: the return of his $300,000 deposit. He demanded its return from Easyvet on numerous occasions, but Easyvet refused, claiming that it was subject to a "set-off" against amounts owed by Plaintiff under the franchise relationship. [*Id.* at ¶¶ 58, 76]. Plaintiff now alleges that, viewed in hindsight, Defendants knew that Easyvet was in severe financial distress and deliberately concealed that information to induce him to make the $300,000 payment. [*Id.* at ¶¶ 59–63]. Plaintiff alleges that, after he wired the deposit to Easyvet, Mr. Bartholomew stated that "[Plaintiff] would never receive his deposit back." [*Id.* at ¶ 66]. Plaintiff further alleges that Easyvet purposefully interfered with the loan process to ensure that Plaintiff did not get financing from the Bank. [*Id.* at ¶¶ 68–71]. Ultimately, Plaintiff believes that the transaction was never a genuine business opportunity but rather a desperate effort to secure short-term liquidity to keep its business afloat. [*Id.* at ¶ 64]. The parties' dispute over the refundable deposit ultimately led to this litigation.

Plaintiff initiated this action against Defendants on December 18, 2025. [Doc. 1]. And on May 26, 2026, Plaintiff filed his First Amended Complaint ("FAC"), alleging a fraud in the inducement claim against both Defendants and a breach of contract claim and tortious interference claim against Easyvet. [Doc. 27 at ¶¶ 80–104]. Defendants now move to dismiss the FAC [Doc. 28] in its entirety. Plaintiff filed a Response in Opposition to Defendants' Motion [Doc. 33], and Defendants filed a Reply [Doc. 36]. The Motion is now ripe for review.

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (internal quotations omitted). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

Plaintiff has asserted three separate causes of action against Easyvet, including (1) breach of contract, (2) tortious interference, and (3) fraud in the inducement. [Doc. 27 at ¶¶ 80–104]. Plaintiff also asserts a fraud in the inducement claim against Defendant Bartholomew. [*Id.* at ¶¶ 89–98]. Defendants argue that Plaintiff has failed to allege sufficient facts to meet the elements of each claim under Tennessee law. [Doc. 14].

Defendants' Motion to Dismiss, however, leaves much to be desired and does little to advance their position. Rather than meaningfully engage the allegations in the FAC, Defendants' opening brief largely recites the elements of each claim and then, in conclusory fashion, declares that Plaintiff has failed to satisfy them. [*See generally* Doc. 31]. The brief fails to explain why the

factual allegations are insufficient and does not develop the legal arguments necessary for the Court to evaluate Defendants' position. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). Indeed, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id.* Some of Defendants' arguments, as discussed below, are entirely meritless.

Defendants' briefing practices are particularly concerning when viewed alongside their reply brief. [*See* Doc. 36]. Their opening brief for their Motion is nine pages long, yet their reply expands to thirteen pages and provides substantially more discussion of the factual allegations and legal arguments than Defendants offered in their opening brief. Although couched as a reply to Plaintiff's arguments, Defendants largely use the brief as an opportunity to meaningfully discuss—for the first time—some of the allegations in the FAC in detail. A reply brief, however, is not an opportunity to unveil arguments that should have been considered in the first instance. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Allowing a party to present its argument in the most skeletal form and then develop those arguments for the first time in a reply brief effectively deprives the opposing party of a fair opportunity to respond. *Id.* Sandbagging techniques are neither proper briefing practice nor an appropriate way to conduct litigation.

Accordingly, it is well within the Court's authority to deem Defendants' perfunctory arguments waived. Out of an abundance of caution, however, the Court will address Defendants' arguments on the merits. With those considerations in mind, the Court now turns to Defendants' Motion.

### *A. Breach of Contract*

Defendants argue that Plaintiff cannot succeed on his claim for breach of contract against Easyvet because he does not plausibly allege facts showing that a condition precedent occurred to make the $300,000 deposit refundable. [Doc. 31 at 4–5]. Specifically, Defendants argue that Plaintiff's allegations are conclusory and fail to establish the condition necessary to make the $300,000 deposit refundable "within the meaning of the Deposit Agreement's refund condition." [*Id.* at 4–5]. The Court finds Defendants' argument wholly without merit.

Under Tennessee law, a party must establish three elements to succeed on a breach of contract claim: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of contract, and (3) damages caused by the breach of the contract." *Tenn. Homes v. Welch*, 664 S.W.3d 1, 8 (Tenn. Ct. App. 2022) (internal citation omitted). It is clear that the parties' dispute pertains to the second and third elements—namely, whether Plaintiff has pled sufficient facts to raise a plausible inference that Easyvet breached the Deposit Agreement causing Plaintiff to suffer damages.

Taking the allegations in the FAC as true, Plaintiff has more than adequately stated a claim for breach of contract. Plaintiff alleges that, on October 11, 2023, he and Easyvet entered into the Deposit Agreement, which expressly provides that the $300,000 deposit "is refundable should [Plaintiff] fail to obtain financing in 120 days after making reasonable efforts to do so." [Doc. 27 at ¶¶ 44–49; Doc. 27-1]. Plaintiff also alleges that he paid Easyvet $300,000 pursuant to the Deposit Agreement. [Doc. 27 at ¶ 45]. Plaintiff further alleges that he "exercised his best efforts to obtain the necessary financing," obtained SBA approval, and that "[j]ust days before closing . . . the Bank abruptly withdrew from the transaction," leaving him "ultimately unable to secure the necessary financing." [*Id.* at ¶¶ 52, 55, 83]. Finally, Plaintiff alleges that, after he failed to secure financing, Easyvet did not return the $300,000 within the allotted time, and, therefore, breached

the Deposit Agreement, causing him damages. [*Id.* at ¶¶ 84–88]. These allegations certainly create more than a speculation or suspicion of a viable breach of contract claim. *Bredesen*, 500 F.3d at 527.

Defendants' proffered arguments miss the mark entirely. For instance, Defendant acknowledges that "Plaintiff alleges he pursed financing, obtained SBA approval, and was scheduled to close before a lender withdrew." [Doc. 31 at 4]. But then, in conclusory fashion, argues that "[t]hose allegations do not plausibly establish Plaintiff 'fail[ed] to obtain financing' within the meaning of the Deposit Agreement's refund condition, as opposed to experiencing a later disruption in a longer financing process." [*Id.* at 4–5]. Unlike what Defendants believe, Plaintiff's allegations—viewed in the light most favorable to him—establish all that is required at the motion to dismiss stage. Indeed, "[f]acts alleged in a complaint need not be detailed, and a plaintiff need not prove his case at this stage." D*obronski v. CHW Grp., Inc.*, No. 24-cv-11649, 2025 U.S. Dist. LEXIS 162742, at *9 (E.D. Mich. Aug. 21, 2025) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007)).

Defendant maintains that Plaintiff has not identified any allegation establishing when the duty to refund the deposit specifically arose; however, Plaintiff's failure to allege specific dates is not fatal to his breach of contract claim. As explained above, the FAC alleges when the parties executed the Deposit Agreement, the amount of time Plaintiff had to secure financing, the amount of time Easyvet had to refund the deposit once the condition precedent arose, and that Plaintiff ultimately failed to obtain financing. [Doc. 27 at ¶¶ 44, 46, 52–57; Doc. 27-1]. These allegations, even without specific dates, permit the Court to draw a reasonable inference that the condition precedent was satisfied and that Easyvet thereafter breached its obligation to refund the deposit. *See* FED. R. CIV. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."). And to the extent Defendants contend

that Plaintiff's efforts in securing financing were not reasonable, that contention presents a factual dispute concerning the interpretation and application of the contract's terms that cannot be resolved at this stage. *Borrelli Walsh Ltd. v. Pope Invs. LLC*, No. 2:20-cv-02880-SHM-atc, 2021 U.S. Dist. LEXIS 145888, at *6 (W.D. Tenn. Aug. 4, 2021).

Finally, Defendants argue that Plaintiff's allegations of damages for lost profits and other consequential losses are not plausibly tethered to the Deposit Agreement's provided remedies. [Doc. 31 at 5]. Plaintiff, however, is entitled to recover damages that "naturally flow from the breach." *United Data Technologies, Inc. v. Byers*, No. 3:16-cv00139, 2018 WL 11411600, at *6 (M.D. Tenn. Jun. 29, 2018). And Plaintiff has alleged sufficient facts to permit the Court to draw the reasonable inference that Plaintiff may be entitled to further damages. *See Pedersen v. Asbury Theol. Seminary*, No. 5:25-cv-00086-KKC, 2026 U.S. Dist. LEXIS 175068, *10 (E.D. Ky. Aug. 5, 2026) ("At the motion-to-dismiss stage, Plaintiffs need not prove the full extent of their damages; they only need to allege facts making their claim for damages plausible." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

Accordingly, Plaintiff has pled sufficient allegations to support a breach of contract claim against Easyvet.

*B. Tortious Interference*

To assert a viable tortious interference claim under Tennessee law, Plaintiff must allege the following: "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the

tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (internal citation omitted).

In seeking dismissal of Plaintiff's claim against Easyvet for tortious interference, Defendants again proceed in skeletal fashion. First, Defendants argue—without citing any supporting authority—that the first element is not satisfied because the allegations describe only a "contingent financing process" rather than a "sufficiently definite relationship." [Doc. 31 at 8]. Tennessee law, however, permits a tortious interference claim in situations involving a "prospective relationship with an identifiable [party]." *Trau-Med*, 71 S.W.3d at 701. Here, Plaintiff alleges that he had a "prospective business relationship" with the Bank (Settlers Best, a division of Wings Financial). [Doc. 27 at ¶¶ 53–57, 100]. The fact that Plaintiff was "scheduled to close on the loan with the Bank within days" alleges a sufficient prospective business relationship with an identifiable third party. [*Id.* at ¶ 55].

Second, Defendants maintain that Plaintiff does not plausibly plead improper motive under the third element because he alleges on "information and belief" that Easyvet's CFO instructed a relative connected to the lender to halt funding. [Doc. 31 at 8]. Claims and allegations within a complaint may be grounded upon "information and belief" if the plaintiff "set[s] forth a factual basis for such belief." *Smith v. GM LLC*, 988 F.3d 873, 885 (6th Cir. Feb. 18, 2021). Plaintiff here has done just that. Although an allegation that Easyvet's CFO's relative merely served on the Bank's board might, standing alone, be suspect, Plaintiff alleges more. Specifically, he alleges that Easyvet's CFO identified the relative and introduced Plaintiff to the Bank as a potential source of financing when Plaintiff had been unable to secure it elsewhere. [Doc. 27 at ¶¶ 52–55]. Plaintiff also alleges facts throughout the FAC concerning Easyvet's deteriorating financial status, while perhaps not particularly strong at this stage, at least permit an inference of an improper motive when viewed altogether. [*See id.* at ¶¶ 15–18, 20–29, 33–39, 59–72]. Because the Court must view

these allegations in the light most favorable to Plaintiff at this stage, the Court finds that Plaintiff has plausibly alleged that Easyvet may have acted with an improper motive to interference with Plaintiff's relationship with Bank.

Third, Defendant—in just two sentences—asserts that Plaintiff does not plausibly plead causation. [Doc. 31 at 8]. The allegations explained above are likewise sufficient to permit an inference that the Bank backed out of its prospective relationship with Plaintiff due to Easyvet's CFO's conduct and the circumstances surrounding its abrupt withdraw from providing financing in connection to the relative's resignation. [Doc. 27 at ¶¶ 53–57]. Defendants may very well have a strong argument that these allegations are insufficient. But they did not make it. Instead, Defendants addressed the issue only in the most perfunctory fashion, leaving it up to the Court to develop and flesh out the argument. Defendant has failed to show that Plaintiff's FAC does not support a legally valid claim for tortious interference against Easyvet.

Accordingly, Plaintiff's claim for tortious interference against Easyvet may proceed.

*C. Fraud in the Inducement*

Finally, Plaintiff has asserted a fraud in the inducement claim against both Defendant Easyvet and Defendant Bartholomew. Defendants argue that Plaintiff's fraud claims fail for the three following reasons: (1) Plaintiff failed to plead the circumstances of fraud with particularity as required by Federal Rule of Civil Procedure 9(b); (2) Plaintiff's allegations amount to a breach of contract claim rather than one for fraud; and (3) Plaintiff's claim against Defendant Bartholomew fails because Plaintiff does not plead defendant-specific fraudulent conduct. The Court finds that Defendants' arguments fail, as a careful review of the allegations in the FAC demonstrate that Plaintiff has plead the circumstances of fraud with particularity as to each defendant.

To state a fraudulent inducement claim under Tennessee law, Plaintiff must allege Defendants "(1) made a false statement concerning a fact material to the transaction, (2) with knowledge of the statement's falsity or utter disregard for its truth, (3) with the intent of inducing reliance on the statement, (4) that the statement was reasonably relied upon, and (5) that an injury resulted from this reliance." *Daly v. Wacker-Chemie AG*, No. 1:13-cv-382, 2014 U.S. Dist. LEXIS 105336, at *20–21 (E.D. Tenn. Aug. 1, 2014) (cleaned up) (citing *Regions Bank v. Bric Constructors, LLC*, 380 S.W.3d 740, 763 (Tenn. Ct. App. 2011)). In addition, a party alleging fraud must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410–11 (6th Cir. 2022) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). To do this, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* Although Plaintiff alleges fraud under Tennessee law, he must comply with the pleading requirements set out in Rule 9(b) because it "governs the procedure for pleading fraud in all diversity suits in federal court." *Id.* at 410 n.10 (internal citation omitted).

Here, Plaintiff's allegations satisfy the time, place, and content pleading requirements, as he alleges—in detail—the fraudulent representations that occurred over a defined period of time regarding Easyvet's financial stability. To begin, Plaintiff alleges that the parties negotiated the sale of Easyvet in "late 2023." [Doc. 27 at ¶¶ 31–32]. During those negotiations, Plaintiff alleges that "on or around August 2023" Defendant Bartholomew, acting as Easyvet's then-Chief Operating Officer, represented that Easyvet "remained a viable business opportunity" and "was a financially stable and viable franchise system poised for expansion." [*Id.* at ¶¶ 39, 61]. Moreover, Defendants prepared a revenue analysis that Plaintiff alleges concealed Easyvet's true financial

condition. [*Id.* at ¶¶ 31, 35, 38]. Although Defendants are correct that certain "[s]tatements of future intention, opinion, or sales talk" are not actionable as fraud, their alleged representations concerning Easyvet's financial condition and purported revenues go beyond mere "language of salesmanship" if, as Plaintiff alleges, Defendants manufactured financial projections and supplied false information. [Doc. 36 at 6–7]. Indeed, Plaintiff alleges that Easyvet was actually in "severe financial distress" when Defendants made those representations. [Doc. 27 at ¶ 95].

Based on all the circumstances alleged surrounding Defendants purported misrepresentations, the FAC supplies "sufficient particularly from which the Court can deduce" where the misrepresentations occurred. *City of Morristown v. AT&T Corp.*, 206 F. Supp. 3d 1321, 1338 n.8 (E.D. Tenn. 2016). And based on the content of those misrepresentations, it is entirely plausible that Defendants "did not have the present intent to carry out" its promise to refund the $300,000 deposit should Plaintiff not be able to secure funding. *Daly*, 2014 U.S. Dist. LEXIS 105336, at *22. Indeed, Plaintiff alleges that Defendant Bartholmew "personally assured [Plaintiff] that the $300,000 deposit was fully refundable and that, in the event bank financing could not be obtained, [Plaintiff] would receive his deposit back." [Doc. 27 at ¶ 51]. Thus, the FAC adequately places Defendants on notice and satisfies the heightened pleading standard under Rule 9(c). *See Hagen v. U-Haul Co. of Tennessee*, 613 F. Supp. 2d 986, 996 (W.D. Tenn. 2009) ("[A] plaintiff need not include precise quotations of the misrepresentations that allegedly constituted fraud . . . ."); *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) ("Clearly, neither this court nor Rule 9(b) requires [a plaintiff] to allege specific details of every alleged fraudulent claim forming the basis of [the plaintiff's] complaint.).

Defendants' second argument—which is only three sentences—briefly contends that the FAC only includes allegations of nonperformance without "nonconclusory facts supporting a plausible inference of a present intent not to perform." [Doc. 31 at 7]. It is abundantly clear, based

on the allegations mentioned above, that Plaintiff has adequately alleged facts that go beyond mere nonperformance of a contract. This is not the type of case where the fraud allegations contained in the complaint are vague and conclusory. *See generally McSwiggan v. Hatfield*, No. 3:25-cv-523, 2026 U.S. Dist. LEXIS 83712, at *12–16 (E.D. Tenn. Apr. 16, 2026). Plaintiff has alleged a detailed negotiation process that unfolded over a defined period of time, culminating in an agreement that Defendants allegedly never intended to honor. Taken together, these allegations plausibly support an inference of fraudulent intent and are sufficient to survive a motion to dismiss.

Defendants' third and final argument asserts that Plaintiff's allegations do not "plead a distinct, false statement by Bartholomew, separate from the written contract terms." [Doc. 31 at 7]. To the contrary, Plaintiff alleges that Defendant Bartholomew "personally championed the transaction" and was the central figure in the parties' negotiations. In fact, most, if not all, of the purported misrepresentations are alleged to come directly from Defendant Bartholomew. [*See generally* Doc. 27 at ¶¶ 32, 35–36, 38–39, 41, 50–51, 54, 59, 66–67, 91]. Based on Defendant Bartholomew's active participation in the negotiations and many alleged misrepresentations, the Court finds that Plaintiff's claim for fraud in the inducement against him survives.

Accordingly, Plaintiff has properly alleged a claim for fraud in the inducement against both Defendant Easyvet and Defendant Bartholomew.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 28] is **DENIED**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**